Per Curiam.

Defendants were charged with keeping a disorderly house during 1964 and 1965, in violation of section 1146 , of the former Penal Law, and of vagrancy, in violation of former section 887 of the Code of Criminal Procedure.
Section 1146 of the former Penal Law provided in pertinent part: “ § 1146. Keeping disorderly houses. Whosoever shall keep or maintain a house of ill-fame or assignation of any description or a place for the encouragement or practice by persons of lewdness, fornication, unlawful sexual intercourse or for any other indecent or disorderly act or obscene purpose therein or any place of public resort at which the decency, peace or comfort of a neighborhood is disturbed shall be guilty of a misdemeanor.” (Emphasis supplied.)
Former section 887 of the Code of Criminal Procedure defined a vagrant as follows: “4. A person * * * (e) who receives or offers or agrees to receive any person into any place, structure, house, building or conveyance for the purpose of prostitution, lewdness or assignation or knowingly permits any person to remain there for such purposes ”. (Emphasis supplied.)
There is ample evidence in this voluminous record to establish defendants’ guilt of both charges beyond a reasonable doubt. The testimony of the police officers was uncontroverted. On eight separate occasions they made personal observations inside *248 the Magic Touch, a restaurant in Island Park, Nassau County, where they observed lewd, indecent and disorderly homosexual activities within the condemnation of both statutes.
In Matter of Becker v. New York State Liq. Auth. (21 N Y 2d 289), cited by both sides, the conduct of the patrons was quite similar to that here involved. Although that case concerned itself with the suspension of a liquor license under the Alcoholic Beverage Control Law, the language of the Court of Appeals is particularly apropos. Said the court (p. 292): “ A line must be drawn soméwhere between which sexual acts are to be permitted in public places and which are not. In our view, the line must be drawn at public feeling of private parts. In this regard, we would not distinguish between the activities of homosexuals and that of heterosexuals. Fondling of the primary sexual organs in licensed premises on a public dance floor clearly constitutes disorder whether between heterosexuals or homosexuals under subdivision 6 of section 106 of the Alcoholic Beverage Control Law.” (Emphasis supplied.)
It is to be noted that former section 887 of the Code of Criminal Procedure applied equally to prostitutes and homosexuals. Subdivision 4 thereof encompassed within its language lewd conduct of homosexuals (People v. Hale, 8 N Y 2d 162).
We find no merit in the contention that a dismissal of the informations is mandated because of an alleged spoliation of vital items of evidence. The destruction of blank negatives of photographs and wiretap tapes, under the circumstances related at the trial, could in no way affect the innocence or guilt of the defendants or give rise to any inference, one way or another, and in fact involved no evidence at all. Hence there was no spoliation of evidence in the accepted sense.
Nor is there any merit to the argument based upon the People’s alleged use of evidence obtained directly or indirectly through illegal wiretaps. It is clear from the record that the judgments of conviction are not bottomed upon wiretap evidence but rather upon information given to the police shortly prior to the issuance of the wiretap orders and upon the personal observations of eyewitnesses who testified at the trial. The situation at bar is readily distinguishable from People v. Betts (272 App. Div. 737, affd. 297 N. Y. 1000), cited by defendants, where the evidence was based entirely on wiretaps which were destroyed. In any event, even if the wiretaps had been used or relied upon, which is not the case here, they would afford no basis for invalidating the convictions (People v. Kaiser, 21 N Y 2d 86, affd. 394 U. S. 280).
*249 The trial court’s failure to compel the identity of an informer was neither prejudicial nor a denial of due process. The conviction of the defendants was based upon the eyewitness’ testimony of three detectives and not upon any information supplied by the alleged informer. In these circumstances, nondisclosure cannot be said to have deprived the defendants of a fair trial (see People v. Malinsky, 15 N Y 2d 86, 93-94).
The further point is made that the trial court lacked jurisdiction to try the informations and impose sentence, predicated upon the alleged failure of the Grand Jury of Nassau County to indict the defendants. Sufficient appears herein to indicate that the Grand Jury did not consider any evidence relating to the charges under consideration but concerned itself with another crime. The County Clerk’s certificate indicated that there had been no indictment or dismissal by the Grand Jury. It is noted that the dismissal of a charge must be evidenced by definite action on the part of the Grand Jury in accordance with the requirements of section 269 of the Code of Criminal Procedure (Peoples. Kelly, 140 Misc. 377).
Defendants’ final argument is that the Trial Judge should not have presided both at the hearing on the motion to suppress evidence and at the trial. Since this was a nonjury trial, it suffices to say that there is no prohibition against the same Judge conducting a pretrial hearing as well as the trial itself (see People v. Brown, 24 N Y 2d 168; People v. Sykes, 22 N Y 2d 159).
Upon the entire record, we are satisfied that the trial court was most meticulous in safeguarding the constitutional rights of the defendants and that their guilt was established beyond a reasonable doubt.
The judgments should be unanimously affirmed.
Concur' — Hogan, P. J., Pittoni and McCullough, JJ.
Judgments affirmed.